IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**LEROY SMITH**                                                                                                    **PLAINTIFF**

**V.**                                                                                            **NO. 1:20-CV-242-DMB-DAS**

**NAUTIC STAR, LLC**                                                                                         **DEFENDANT**

## OPINION AND ORDER

Nautic Star contends that Leroy Smith's § 1981 race discrimination claim must be dismissed because Smith's complaint contains both discriminatory and non-discriminatory reasons for his termination. However, because Smith alleges that race was one of the but-for causes of his termination and otherwise pleads sufficient facts at this stage to support his race discrimination claim, dismissal will be denied.

## I
## Procedural History

On November 23, 2020, Leroy Smith filed a complaint in the United States District Court for the Northern District of Mississippi against his former employer, Nautic Star, LLC,[1] alleging race discrimination and retaliation in violation of both Title VII and 42 U.S.C. § 1981. Doc. #1. Nautic Star answered the complaint on December 28, 2020.[2] Doc. #7.

On January 25, 2021, Nautic Star filed a "Motion for Judgment on the Pleadings" "[p]ursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(6)" on grounds that Smith "cannot state a claim against NauticStar for racial discrimination under Section 1981, and such claims must be dismissed." Doc. #16. The motion is fully briefed. Docs. #17, #26, #30.

---

[1] Different from the complaint, the defendant has referred to itself as "NauticStar, LLC" in its filings. *See, e.g.*, Docs. #4, #7, #16, #27. But it has not contended that it was misnamed or misidentified in the complaint.

[2] Nautic Star was granted an extension to respond to the complaint. Doc. #5.

**II**
**Standard of Review**

Although Nautic Star's motion references both Rules 12(c) and 12(b)(6), because Nautic Star has filed an answer, the motion is properly reviewed under Rule 12(c). *Triplett v. LeBlanc*, 642 F. App'x 457, 459 (5th Cir. 2016). However, "[a] Rule 12(c) motion is subject to the same standard as a motion to dismiss under FRCP 12(b)(6)." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

"To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up). The court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

**III**
**Factual Allegations**

Smith, an African American male, began working for Nautic Star in September 2013. Doc. #1 at 2. On August 5, 2019, as he was walking to clock in, Smith observed Charles Parks, an African American coworker, having trouble clocking in and advised him to speak to a supervisor, Villa Dobbins. *Id.* at 2–3. Parks walked with Smith and a third coworker towards Dobbins. *Id.* at 3. "As Parks walked away from Dobbins, Steven Beckner, a white Lead Person co-worker who was nearby, saw Parks walking and said there goes that nigger." *Id.* At "[a]round the same time," a coworker named Polly informed Smith that she had overheard Beckner using the racial slur in

2

reference to Parks and another black employee, and "she did not like to hear the 'n' word because she had mixed grandkids." *Id.*

Smith, offended by Beckner's use of a racial slur, "stated to Beckner if he had a problem with someone's race or color he would rather him not use the 'n' word when referring to them." *Id.* Afterwards, Smith continued to get ready for work. *Id.* at 3–4. Smith learned that Beckner was talking to Smith's supervisor, Jim Overdorf, about the interaction and suspected that "Beckner was trying to get in front of the incident before [Smith] reported him." *Id.* at 4. Smith also went to Overdorf and "told him that Beckner had used the 'n' word in his presence and he had asked him not to use such language at work because it was offensive." *Id.* Smith asked Overdorf if Beckner would face disciplinary action but Overdorf walked away without answering. *Id.* Smith finished getting ready for work and began his shift. *Id.*

After thirty minutes, Overdorf obtained a written statement from Beckner but not from Smith. *Id.* Fifteen minutes later, "Overdorf came and got [Smith] and told him to follow him to HR." *Id.* at 5. Overdorf and Smith met with Mitzi Smith, the human resources manager, and Randy Serfozo, the vice president of operations. *Id.* Mitzi told Smith that he was wrong to confront Beckner and that he should have gone to human resources instead. *Id.* Smith told Mitzi, Serfozo, and Overdorf "what happened, how Beckner's use of a racial slur offended him and how [Smith] acted appropriately and reminded them it was all on camera and they should look at the video recording taken of the incident." *Id.* The company officials did not obtain a written statement from Smith and Smith's employment was terminated the same day.[3] *Id.* Beckner remains a Nautic Star employee. *Id.*

---

[3] In one instance, Smith alleges that he was terminated on November 5, 2019. Doc. #1 at ¶ 26. The remainder of the complaint and Smith's EEOC charge confirm his termination date as the date of the incident, August 5, 2019. *See* Doc. #1 at ¶¶ 6, 33, 38; Doc. #1-1 at PageID 17.

On November 6, 2019, Smith filed a charge with the Equal Employment Opportunity Commission. *Id.*; Doc. #1-1 at PageID 17. Nautic Star responded that the charge lacked merit because Smith "was dismissed because he violated a non-discriminatory policy." Doc. #1 at 6. In her notes from the incident, Mitzi states:

> I then explained to Leroy that when he left his own work area and approached another employee outside his work area, asked him what was his problem was [sic], as he had previously admitted, this created a hostile work environment which is a policy violation and I had to end his employment effective immediately.

*Id.* Smith received a Right to Sue letter from the EEOC on September 1, 2020. *Id.* at 2.

## IV
## Analysis

In his complaint, Smith alleges that his race was a motivating factor in Nautic Star's decision to terminate his employment because Nautic Star did not take an adverse action against Beckner. Doc. #1 at 7. Nautic Star, relying on *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020), argues that Smith's § 1981 claims should be dismissed because "[b]y alleging facts which plainly support both legitimate and discriminatory reasons for his termination, [Smith] has failed to plausibly allege but for causation." Doc. #17 at 1–2. Smith responds that "[b]ecause *Comcast* was not an employment case, the Court should construe it in light of *Bostock v. Clayton County* [140 S. Ct. 1731 (2020)], where the Court extensively discussed the effect of 'but for' causation in employment cases." Doc. #26 at 1–2. Smith argues that, viewing the case under *Bostock*, he "has pleaded facts which … support an inference that but for his race, [Nautic Star] would not have terminated his employment." *Id.* at 5. Nautic Star replies that "while *Bostock* does discuss the but-for standard under Title VII, it does not change Plaintiff's burden under *Comcast* to allege a sufficient factual basis to plausibly support but-for causation in his initial pleading." Doc. #30 at 2.

4

As Nautic Star recognizes,[4] for Smith's race-based claim under § 1981, Smith must allege facts that plausibly show that – but for his race – he would not have been terminated. *See Comcast*, 140 S. Ct. at 1019 ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). However, contrary to Nautic Star's position, the fact that Smith's "complaint alleges both discriminatory and non-discriminatory explanations for [Smith's] termination"[5] does not mean that race cannot be a but-for cause of his termination as "[o]ften, events have multiple but-for causes." *Bostock*, 140 S. Ct. at 1739. Rather, Smith's protected trait need only be one but-for cause of the challenged decision. *Id.*

While "an employment discrimination plaintiff need not plead a prima facie case of discrimination in order to survive a motion to dismiss, [the Fifth Circuit has] held that a plaintiff must still plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 881 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016)). Thus, in reviewing a motion to dismiss, a district court may "use[] the language of a prima facie case as a framing device to determine whether [a plaintiff] … sufficiently alleged facts to support the ultimate elements of each claim." *Id.*

The elements of a discrimination claim brought under § 1981 are identical to the elements of a Title VII discrimination claim. *Pratt v. City of Hous.*, 247 F.3d 601, 606 n.1 (5th Cir. 2001).

> To demonstrate a prima facie case of employment discrimination, [a plaintiff] must show that [he] (1) belongs to a protected class; (2) was qualified for the position; (3) experienced an adverse employment action; and (4) was similarly situated to other employees who were not members of [his] protected class and who were treated more favorably.

---

[4] Doc. #17 at 4.

[5] *Id.* at 6–7.

*West v. City of Hous.*, 960 F.3d 736, 740 (5th Cir. 2020) (internal quotation marks omitted).

Smith's complaint alleges that (1) as an African American, he is a member of a protected class; (2) having worked for Nautic Star for almost six years at the time of his termination, he was qualified for his position; (3) he was terminated from his employment; and (4) he was treated less favorably than Beckner, a white coworker. Based on these allegations, Smith satisfies the first three elements of his discrimination claim. So the question is whether Beckner "was treated more favorably than [Smith] under nearly identical circumstances." *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016) (internal quotation marks omitted).

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kans. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted).

"[S]crutinizing whether a plaintiff's fellow employees were really similarly situated is an inquiry more suited to the summary judgment phase." *Benford v. Milwaukee Elec. Tool Corp.*, No. 4:19-CV-179, 2021 WL 735642, at *7 (N.D. Miss. Feb. 25, 2021) (quoting *Cicalese v. Univ. of Tex. Med. Branch,* 924 F.3d 762, 768 (5th Cir. 2019)) (cleaned up). "So long as the plaintiff pleads facts which plausibly allege the existence of a satisfactory comparator, the claim is sufficient." *Id.* While a plaintiff need not plead facts which satisfy the nearly identical standard, *Cicalese*, 924 F.3d at 767–68, the plausibility standard will "typically require at least some degree of detail regarding any comparator employees on which a plaintiff relies." *Turner v. United Parcel Serv.*, No. 3:19-cv-476, 2019 WL 5190992, at *4 (M.D. Tenn. Oct. 15, 2019); *see Shukla v. Deloitte Consulting LLP*, No. 1:19-cv-10578, 2020 WL 3181785, at *7 (S.D.N.Y. June 15, 2020)

("[N]umerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators.") (collecting cases). Additionally, when the facts as pled "represent[] such a differentiating circumstance that the Court has no basis to conclude that the differential treatment … resulted from his race," dismissal is warranted. *Jacques v. Wipro Ltd.*, No. 3:20-cv-865, 2021 WL 1270467, at *7 (E.D. Va. Apr. 6, 2021).

Here, Smith alleges that Beckner, his proposed comparator, was a "Lead Person co-worker" who used the word "nigger" at work. Doc. #1 at 3. Smith further alleges that he was terminated for confronting Beckner about his use of the racial slur. *Id*. at 3–4. According to Smith, his and Beckner's conduct both implicate Nautic Star's policy against creating a hostile work environment. *Id*. at 6. There are no allegations as to whether Smith and Beckner worked in the same position, shared the same duties, or had the same supervisors. Thus, the only specific allegation supporting a comparison between Beckner and Smith is the allegation that the two violated the same policy—creation of a hostile work environment—during the same sequence of events. While the underlying conduct is not *identical*, the Court cannot conclude that it is so different as to offer absolutely no basis for this Court to find that the differential treatment resulted from Smith's race. Under these circumstances, dismissal of the claim is unwarranted.

Nautic Star's motion does not expressly mention retaliation so it is not entirely clear whether Nautic Star intended to seek dismissal of Smith's § 1981 retaliation claim. To the extent Nautic Star intended to do so, dismissal would be denied. Smith has stated a claim for retaliation because he alleges that (1) he complained internally about Beckner's use of a racial slur;[6] (2) he

---

[6] *See Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (employee engaged in protected activity when he internally reported racially hostile comments made by a supervisor); *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 273–74 (2009) (antiretaliation provision of Title VII protects an employee who speaks out about discrimination internally).

was terminated from his employment later the same day; and (3) his termination was a result of his complaining about Beckner's use of a racial slur. Doc. #1 at 9; *see Willis*, 749 F.3d at 317 ("To present a *prima facie* case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.").

In sum, Smith has alleged sufficient facts for his § 1981 claims to survive at this stage of the litigation.

### V
### Conclusion

Nautic Star's "Motion for Judgment on the Pleadings" [16] is **DENIED**.

**SO ORDERED**, this 25th day of May, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**